All right, good morning. Mr. Mulder, we'll hear from you first. Thank you, Your Honor. May it please the Court and Counsel. My name is Jeff Mulder. I'm with the Bassett-Vergrenley Law Firm. I'm here on behalf of the Attorney General's Office. I'm here to talk about the Appellant Allied Professionals Insurance Company, which I'll refer to as APIC in the argument. Because Appellee's priority of coverage claim against APIC cannot be resolved without reference to the APIC policy, as expressly acknowledged by the District Court in its order, APIC respectfully requests that this Court reaffirm, read, and reverse the District Court's decision. Before jumping into the argument, I just want to spend one moment on the standard of review governing the appeal. As we noted in our briefing, this Court reviews de novo the denial of a motion to compel. However, the Appellee and its opposition advocated a different standard of review, that of the abuse of discretion standard. In support of that argument, they cited the noble decision from the Fifth Circuit. However, this Court has already expressly rejected that argument in the Donaldson decision. There, this Court recognized the circuit split and adopted the de novo standard of review. Counsel, can I ask about the, sort of the whole issue, the underlying issue here? You know, the way the Court, the Minnesota Supreme Court has applied estoppel, and the only way they've applied estoppel in this context, is when, for example, one party tries to get arbitration or tries to, you know, and then the other party denies it, right? And just to use an example from earlier, and that's estoppel because you invoked a particular provision in the contract and tried to have it for you but not for the other side. I've never seen anything in the entire history of the Minnesota Supreme Court that would suggest that they would adopt it for something other than that, where you're relying on one part of the agreement but not the other part of the agreement. Now, maybe we're guessing here, but I just haven't seen that. And, in fact, the Court's been very hesitant about extending estoppel principles. Well, certainly, Judge Strauss, you're uniquely qualified to make that statement. And in response to your question, I would refer to you what the district court held and what this court held in the wholesale grocery product and the trust litigation. Your Honor is correct. I am not aware of any decision from the Minnesota Supreme Court that expressly adopts direct benefits estoppel. That's the argument. That's the core of our argument here today. But they've never rejected that argument, and they have routinely adopted Federal law, or their rulings are consistent with Federal arbitration law. Well, but I'm not sure that's true either, because in Envoy, this was Justice Meyer's opinion, Justice Meyer was specific to say Federal courts have done this, but she did not adopt what the Federal courts had done. So it's not even clear to me that we've done what Federal or that the Court has done what Federal courts necessarily have done in the estoppel context. Now, maybe we've said that, but if you look at the underlying opinions, I don't know if that's true. Okay. Well, what I would refer your Honor to is the wholesale grocery product and the trust litigation from this circuit, where they said, you know, in the estoppel context for arbitration, which is what that case was deciding, equitable estoppel, very close to direct benefits estoppel. This circuit stated, although there is no Minnesota case directly on point, this Court has observed that, quote, Minnesota appears to follow Federal law regarding equitable estoppel, end quote. And that's what the district court judge held in this case. And that's — and therefore, the district court predicted that the Minnesota Supreme Court would follow Federal arbitration law on estoppel. Does that find us, though — I mean, I think I disagree with that. But does that find us when the one direct benefits estoppel case we have is from Missouri, where we were doing an eerie guess on Missouri? I don't — maybe this circuit has adopted it as a matter of Federal law, but I'm not aware that we have. And if — maybe you could enlighten me. There's a difference there between guessing in Missouri and adopting it as a matter of Federal law. Well, certainly. Certainly, I understand the distinction, Your Honor. The — you're correct that the Reed decision was a guess under Missouri law. I think it's reflective of Federal law. And I'll discuss some of the direct benefits estoppel cases. This Court certainly cited the Fifth Circuit decision in Noble with approval. And I'll go through those — the reference to contract standard. But what I would submit, Your Honor, is that this circuit has held that Minnesota would follow Federal arbitration law. And there has been no development that I'm aware of in Minnesota state court jurisprudence since the wholesale and a trust case that would somehow impugn that decision. And the district court in this case found that to be true as of the time it issued its decision. With respect to the reference to contract analysis, we have to start at square one, which is what is required to resolve this priority of coverage claim. In Minnesota law, state law is very clear that to resolve a priority of coverage claim, here the appellee will have to — their claim requires reference to the APIC policy. It's not optional. It's absolutely required. We know that from their request for relief in this case. And we know that from the district court's order. The district court, at note two in its opinion, which is addendum page 15, NCMEC is asking this court to determine priority by applying Minnesota's total insuring intent and closest to the risk test, both of which involve discerning the attended functions of the policies and identifying the risks that are reflected in each policy's premiums. The appellee has never disputed this characterization specifically, that their claim requires reference to the APIC policy to be resolved. Indeed, it knew expressly what the law required. That's why it attached a copy of the APIC policy as exhibit two to the complaint, and it quoted it extensively throughout its complaint. In the Reid decision, after noting initially the strong policy favoring arbitration and noting the five theories by which a signatory can bind a non-signatory, this Court stated with respect to direct benefits estoppel, a party can become bound to an agreement, one, by knowingly seeking and obtaining direct benefits from that contract, or two, by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. With respect to the second prong of that test, that's precisely what the appellee is doing in this case. Request for relief in the prayer for relief, excuse me, paragraph C, it seeks, quote, a declaration that the allied massage policy is primary and the NCMEC policy is, at most and even assuming a duty to indemnify exists, excess. The district court expressly recognized that it could not resolve the claim without reference to the APIC policy. It stated, quote, at page 11 in the addendum, it is literally true that the court cannot determine the priority of coverage without referring to the terms of the APIC policy. Unfortunately, where we contend the court committed error is by continuing in its analysis. It went on to determine that Reed does not mean expressly what it says. The court said what courts say is sometimes not the same as what courts do. Like a recessive gene, language in case law sometimes replicates without having any real effect. That is the case with Reed's second prong. This, of course, isn't just language in the case law. This is an expression of the rule of law for direct benefits estoppel. But where the court strayed, in our opinion, is that it inserted the word soul. It determined that for direct benefits estoppel to apply, that the claim by the non-signatory must solely require reference to the contract containing the arbitration clause. And we submit that the precedent indicates in this area is that where the contract containing the arbitration clause is required to resolve the claim by the non-signatory, that's where direct benefits estoppel applies. We cited three cases applying direct benefits estoppel. The Blaustein case, the Sam Houston electric co-op case, as well as the Hayes Riches 8CA Holdings case. In each one of those cases, the court held that it could not resolve the claim brought without referencing the contract containing the arbitration clause. Well, and that, I guess that's one of my big problems with direct benefits estoppel is I think that Judge Schultz put it interestingly, which is that courts don't mean what they say. He said, well, it can't mean referring because that would basically, that would swallow the whole thing. And so what do we do about that? And here's the test. What I would refer Your Honor to Judge Strauss is it doesn't say just reference. It doesn't say merely reference. It says the claims must reference the contract containing the arbitration clause. And if you look at each and every single one of the cases cited by the appellee that reject the application of direct benefits estoppel, in each and every single one of those cases, the court found that the court, that the claim at issue did not require reference to the contract containing the arbitration for its resolution. For example, Noble Drilling from the Fifth Circuit. There, the court stated that it agreed with Plano's argument that, quote, its claims can be determined without reference to the agreement. In the Johnson v. Patton case, Northern District, Texas, also cited by appellee, the court stated, quote, here as in Noble Drilling, Patton argues that his claims do not arise under the legal services contract, but from, quote, general obligations imposed by law. The court agrees that Patton's claims in the Rhode Island suit arise from duties Berry has as an attorney, not from the contract. This Court's decision in Wholesale Grocery, as I referenced earlier, there was equitable estoppel, not expressly direct benefits estoppel. But this Court distinguished the cases applying estoppel from those that didn't. And it stated, quote, sorry. It stated, quote, without the contracts in those cases, the Plano's would not have had a cause of action. In contrast, the retailers are bringing antitrust conspiracy claims against the nonsignatory wholesalers. These statutory claims exist independent of the supply and arbitration agreements. Finally, the Donaldson case, which I referenced in the standard of review. There the court held that despite the existence of the contract, and seeing the arbitration close, the party in that case had, quote, a basis for recovery even if there was no agreement. So what the line in these cases stands for is, and I reference again Reed, the word must reference the contract, right? The word must. And what the line through these case law is, if the claimant issue that's asserted by the nonsignatory here appellee, if it can't be resolved without reference to the contract, direct benefits estoppel is appropriate. If it can, if it's a common law claim and maybe the document is just referenced in discovery, right, or maybe it's just referenced in the complaint, but it's innocuous, then direct benefits estoppel is not appropriate. What I believe led the district court to discuss adding the sole requirement is a concern about potential application in future cases, particularly coverage cases, which often involve multiple parties, can be complex. And the example given in the district court's order was an environmental coverage case where you might have a policyholder, 11 insurance companies, only one of which has an arbitration clause. And the district court expressed concern that granting the motion in our case could lead to a result where all 12 of those parties are forced into arbitration. But I would submit that that hypothetical, it doesn't hold water. The reason being is if the policyholder in that fictional circumstance sued its 11 carriers, whether they be up a tower or across different years or both, the insurer with the arbitration clause in its policy would move to compel arbitration and either stay or dismiss the claims. That motion would be granted if the policyholder and that insurer would have their disputes resolved at arbitration. It would be binding on them. And a court would resolve the claims amongst the other parties. There would be no certain. I just want to ask. So this works pretty well in a professional malpractice case or could work well. But Minnesota also has the No Fault Act. And I'm just wondering whether this even works, even theoretically works, in a situation involving car accidents where there's very unique provisions on how to handle car accidents under the No Fault Act. It seems to me that if we adopt your rule, there would be a little bit of, let's say, it would send that system awry. It would potentially conflict with the No Fault Act. Yeah. And your honor is referring to a first-party claim under the No Fault Act?  Exactly. Yeah. And I think that's the distinction to be drawn here. Here we've got a third-party coverage claim, right? And that dovetails which I'm generally going to rest and erase with respect to the direct benefits issue. But we talk about how in a third-party context, the benefit isn't direct payment. It's you're paying some of my debt to a third party. In the first-party context, number one, you have statutory regulation, right? So there's that issue, number one. The statute would obviously, would trump. Would trump the estoppel. Yes. And number two, you have a first-party claim there, right? So to the extent not inconsistent with a statutory scheme, you've got an insurance policy that contains an arbitration clause. And the policyholders choose the insurer. It's going to go to arbitration. Very rarely would you ever have a circumstance, and I can't think of one. I handle more third-party claims. But in the first-party context where you would have a priority of coverage dispute, you know, Would you care to save any time for rebuttal? I would. I'll just close by saying, as the Reid court expressly recognized, there's strong policy in favor of arbitration and doubts are resolved in favor of arbitration. Because appellee's claims depend on and cannot be resolved without the APIC policy. We respectfully request that the court reverse the district court's order. Thank you. And I would respectfully request to reserve the remaining time. You may. Mr. Cooter, we'll hear from you. Chief Judge Colleton, Judge Strauss, Judge Shepard, may it please the court. Robert Cooter here on behalf of the Appellee NCMIC Insurance Company. NCMIC respectfully requests that the district court be affirmed in all respects. The issue squarely before the court is whether rare and exceptional circumstances are present here sufficient to compel a non-signatory to an insurance contract and a stranger to an insurance contract to arbitrate under the terms of that strange contract. When it is asserting claims, A, that have absolutely nothing to do with that contract. In this case, count one, in which we are saying this massage therapist, we don't think we insure you. Or at least we would like a district court and an Article III court to decide that question. That's got nothing to do with the APIC policy. It's got everything to do with our contract and whether the therapist qualifies as an insured under the person's insured provisions of our policy. Or another claim which seeks absolutely no direct benefit or benefit whatsoever under that strange and foreign insurance policy. They ignore that. You look in the brief, count one, in APIC's brief, they never, ever confront that question. And Judge Schiltz talked about it right away. Well, I shouldn't say right away, but he addressed it. That has nothing to do with their policy, that count that we don't even insure you potentially, Ms. Erdman. Now, the arbitration is a matter, and this is longstanding from the United States Supreme Court, it's a matter of consent, not coercion. Nobody shall be compelled to submit to arbitration an issue which they have not so consented. And we can talk about Waffle House EEOC going back to the Steelworkers case back in 1960. But it's a matter of contract formation. And if two parties want to contract to go to arbitration, you've heard arbitration cases this morning. But these people and these parties agree to contract. And then at that point, hey, now you've got freedom of contract, and we can agree to have anybody we want decide this dispute. We can agree to the terms and how it's going to work and what the evidentiary provisions are. That's nothing here. I would raise it. That it's a matter of state law contract and that general equitable and contractual principles apply. So, you know, if this particular doctrine applies, then why wouldn't it create an obligation on the part of the other insurer? Yeah. Minnesota has never, under Envoy, Minnesota has never adopted this equitable estoppel. This Court, the Eighth Circuit, to my knowledge, has never compelled a non-signatory to arbitrate at the request of a signatory. And as Judge Schiltz stated, it would be grossly unfair to require stepping back. A chiropractic malpractice insurer from Clive, Iowa, just outside of Des Moines, that insures chiropractors nationwide would never, under any rational circumstance, agree that we'll arbitrate out in L.A. in front of a California lawyer. They are asking for equitable principles to be applied here. And as Judge Schiltz said, it would be absolutely and grossly unfair to do that here. We're a non-signatory. And this would be unprecedented, rare relief that they're requesting that would require us to forbid, or I should say nick-nick, to forego its Seventh Amendment right to a jury trial and to have an Article III judge and court decide the claims that are at issue. I would respectfully request or submit that Judge Schiltz got it right in many senses, but also that the Reid decision is being taken out of context. And Judge Schiltz put it in context when he said at oral argument, they can't mean that. They can't mean that. And, in fact, they didn't mean that in the sense that the Reid court cited noble drilling. And there is a provision in the noble drilling decision that says, or in terms of knowingly exploit, accept a direct benefit, or assert a claim that is resolved by reference to the contract. And that's the quote that is excerpted in the Reid decision. But if you read further, and then the quote there, and they borrow that from noble drilling, then if you read further in noble drilling, another case which rejected the application, it says solely, claims that must be solely referenced by, to the contract. And that is, I believe, at 620 F. 3rd 474, if I'm not mistaken. So he was, so the noble drilling court said a claim that must be solely referred to by that contract. Our claims are anything but solely under the AP. Doesn't it come close, though? Because to figure out whether they're responsible, don't you have to read their insurance policy and refer to their insurance? I mean, it seems like it almost entirely depends on the other insurance policy. Not at all. No. Explain why. Respectfully, because Minnesota adopts a total insuring policy, insuring intent test, which policy was affected primarily for the risk in question, and which was affected, if at all, for an incidental purpose. And you would look, as Judge Schiltz stated, or as the trial court stated, you would look at a NCMEC policy, you would look at the APIC policy, you would look at applicable law. Oh, I see. So your argument is because you have to look at applicable law and your policy, that it's not solely their policy. I see. That's correct. And, in fact, the noble, just to go on the tree, if you will, here, the noble drilling court took its case, its decision from the Hellenic Investments decision, which was a Fifth Circuit case. And in that case, it was a claim that was solely under the contract. In other words, a commercial ship buyer is buying this commercial ship, and it's from the owner. The owner has a contract with this classification society in Norway to classify the ship. It's got a forum provision, a forum selection provision. We'll go to Norway, and the purchaser, the prospective purchaser, is well aware of that and that contract and the terms of that contract. Well, the ship turns out to have all these issues. It's getting stuck in port. They bought a lemon, if you will, so they have problems. They sue the classifier, and the claims are solely based on that contract, the DNB, the terms of that contract, and you didn't follow what you said you would do under that contract, the rules of classifying these ships. That's where the Hellenic Investments Court said, okay, you're only, you're solely referring to that contract. That isn't the claim here. And the case law is fairly clear. All of our claims, all of them would have to be as referred to under their contract. So not only do we have Account 1 that has nothing to do with their contract, but all of our, they all would have to be, and it would have to be solely referring to theirs, and we're not solely referring to theirs. We're seeking a declaration. We're not seeking any benefits under their contract. We're not, which is the case law that's out there is basically, and it's rare, okay? But if it's, you're seeking a benefit in the one case, the person signed on behalf of an LLC, and he was suing the law firm, but he, for the same benefits, that was the Blaustein case, and they said, okay, those are the exact same type of benefits that you're claiming you got, you received from the attorney, and now you're asserting a malpractice. You're the chief member of that LLC. You want the same stuff that the LLC was going to get. That's not, we're not seeking a defense under their policy. We're not seeking an indemnity, the same type of benefit. We are seeking, and we are only doing what the Minnesota Supreme Court would say we're encouraging insurers to do. If we step back, we're getting letters from APIC, hey, we want you to indemnify, and this is, I don't know if what's the right term, but we've got this massage therapy liability policy. We insure a massage therapist for massage therapy negligence. We want you to pick up that whole tab under your chiropractic malpractice policy, and they keep pushing that, and under, and then we're getting letters from their general counsel. Under principles of equitable indemnity, this is on you. Well, I've done a lot of coverage work. I have never heard equitable indemnity invoked in that, but the point being, at this point, we have a coverage dispute. We have an underlying litigation, and we have some, we have a dispute or a disagreement, not to borrow back from your earlier argument, but we have a coverage issue, and the Minnesota Supreme Court is very clear. If there's coverage issues, bring a declaratory judgment action to determine the issues of coverage. Why do you do that? Because it promotes settlement, and in fact, now, we didn't get a declaratory judgment, at least not yet, but the case did, in fact, settle, but then the policy is bring the claim and let the coverage get sorted out because it will promote settlement of the underlying, in this case, the underlying Shanson matter. So that's all we did, sought a declaration as to priority of coverage, absolute, with reference to our policy, their policy, and applicable law. So it would be grossly unfair to say, oh, yeah, as the trial court pointed out, to deny us our Seventh Amendment right when we haven't agreed in any way, shape, or form to arbitrate out in California. So what they're asking you to say, the Minnesota Supreme Court would do something it would never do, and we're doing something we have never done before, which is to compel a non-signatory to arbitrate under principles of equitable estoppel. Now, the two claims we're not seeing, as I say, they're arguing Reed out of context. They're swiping this little, with reference to the contract, and Reed on, no pun intended, under noble drilling, and it would have to be solely with reference to that contract. And then the Breedist case, and that's cited in the briefs, also time, I believe this court has cited with approval, would talk about all of your claims would have to be with reference to that contract. So because we didn't seek, NCMEC did not seek any direct benefits under the APIC policy, it is not making any claims that are solely referable to the APIC policy, and, in fact, one that has absolutely nothing to do with the APIC policy, then we would respectfully submit that they fail, easily fail, the Reed test. So the example that was given by the trial court, this was the EPA suing. The trial court said, well, what if the EPA was suing a bunch of insurers, got involved in the cleanup, and then all of a sudden you've got someone going back decades and decades for, let's say, environmental contamination, and then you've got, in that case, the equivalent of an APIC waiving their policy. Oh, you see right here, 19 other insurers? I've got an arbitration clause, so I think we're going to have to go out to L.A. to arbitrate in front of an arbitrator out there. And as the court properly said, that is a huge problem and would be not another reason why we are not seeking in any way a claim that would fall under equitable estoppel and direct benefits estoppel. As to the standard of review, I would submit that if equities invoked at the district court's discretion and they want equitable estoppel, it just seems like the better rule would be an abuse of discretion standard. The Burroughs case, that was a grant. It said when we grant arbitration, that's a de novo review. So out of fundamental fairness and to preserve our constitutional rights, we would respectfully request that the district court be affirmed. Thank you. Mr. Mulder. Thank you, Your Honor. May it please the Court, just briefly. Three points. First, he mentioned that we don't address count one. In the same breath, he also said count one has nothing to do with the APIC policy, which has nothing to do with the APIC policy. It has nothing to do with us. We're not a proper party to that claim. And the case law doesn't suggest at any point in any of the cases that I've read that every single count of the complaint has to solely relate to the contract. Number two, he talks about sole reference to the contract containing the arbitration clause. It's difficult to conceive of a claim that would solely require reference to the one contract, right, that's brought by a non-signatory. Here we have the cleanest example I can think of. You've got two contracts and case law. That's all we have. Even in a standard third-party policyholder versus insurer, the duty to defend, you have to look at the policy and the complaint, or you have to look at the policy and the special verdict form. You always have to consult more than one document. Finally, we hear a lot about consent and deprivation of rights up here. All our position is, is that if they want to seek a declaration, that they don't have to pay $1.6 million that they otherwise would have to pay. They have to go to arbitration to do it. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. That concludes the